**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**GEORGE R. HUGHES,**

       **Plaintiff,**

         **v.**                        **Civil Action No.  09-220  (JDB)**

**VINCENT ABELL, et al.,**

       **Defendants.**

---

## MEMORANDUM OPINION

Plaintiff George R. Hughes brings this action against Wells Fargo Bank ("Wells Fargo") alleging violations of the D.C. Consumer Protection Procedures Act ("CPPA") and seeking to quiet title to his primary residence after refinancing his mortgage.[1]  Hughes alleges that Wells Fargo provided him financing on unconscionable terms and misrepresented material facts.  Now before the Court is Wells Fargo's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, Wells Fargo's motion will be granted in part and denied in part.

## BACKGROUND

Hughes purchased 5236 5th Street NW, Washington, DC ("the Property") in November 1997.  Compl. ¶¶ 1, 9.  He took out two mortgages against the Property in order to pay for it, the larger of the two from Chase Manhattan Bank.  Id. ¶¶ 10, 11.  After Hughes became delinquent on the larger loan in 2004, Chase Manhattan notified Hughes that it would foreclose on the

---

[1] Hughes raises separate claims against defendants Vincent Abell, Calvin Baltimore, and their business, Modern Management Company.  Those claims are not before the Court at this time.

property.  Id. ¶¶ 13, 14.  Prior to foreclosure, defendant Baltimore, working with defendants

Abell and Modern Management, solicited Hughes's business and represented that he would help

Hughes remain in his home.  Id. ¶¶ 15–17, 25, 27.  Hughes signed a series of documents, the

effect of which was to transfer title to the Property to Abell, who then rented it back to Hughes.

Id. ¶¶ 19, 25.  Hughes alleges that he understood the transaction "as a way to retain ownership of

his home."  Id. ¶ 24.  Around August 2006, Hughes received notice from Chase Manhattan that it

had changed his contact information to that of the offices of Modern Management.  Id. ¶ 29.  He

also received notice from Modern Management that he was behind in his payments.  Id. ¶ 30.

Sensing problems with Modern Management and with Chase Manhattan, which he

"believed to be connected to Modern Management," Hughes approached defendant Wells Fargo

to seek refinancing of his Chase Manhattan mortgage.  Id. ¶¶ 31, 32.  Wells Fargo offered to

refinance his Chase Manhattan mortgage so long as Hughes consolidated his second mortgage

and other, nonmortgage debts, which together totaled $33,517.03, into his agreement with Wells

Fargo.  Id. ¶¶ 33, 35.  The statute of limitations had passed for some of these nonmortgage debts.

Id. ¶ 34.  Hughes's outstanding balance on his Chase Manhattan mortgage was $87,775.43, so

that after consolidation Wells Fargo was proposing to make a loan with a 38% increase over the

value of Hughes's prior mortgage debt.  Id. ¶ 35.  Hughes was to pay $1,604.18 per month for

this loan, a 97% increase from his $815 monthly payment to Chase Manhattan.  Id. ¶¶ 11, 37.

This payment amounted to approximately 46% of Hughes's monthly income of $3,511.83.  Id. ¶

36.  Hughes reported this income to Wells Fargo and made no representations about whether it

would increase or decrease in the future.  Id.  Wells Fargo reserved the right to increase the

loan's initial interest rate of 7.875% up to a limit of 13.875% after the first two years of the loan.

Id. ¶ 40.  Hughes accepted these terms and closed the loan on September 22, 2006.  Id. ¶ 39.

Hughes paid $10,127.32 in closing costs and received $61,080.22 as part of the loan.  Id. ¶¶ 35,

42.

Hughes brought the present action on January 15, 2009 in the Superior Court of the

District of Columbia.  Four of his six counts are against Abell, Baltimore, and Modern

Management for violations of the CPPA, creation of an equitable mortgage, violations of the

federal Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act

("HOEPA"), and common law fraud.  Id. ¶¶ 45–74.  Those counts are not presently at issue.

Hughes's fifth count is against Wells Fargo for violation of the CPPA.  Id. ¶¶ 75–79.  The sixth

count seeks to quiet title against both Wells Fargo and Abell, who also claims an interest in the

Property.  Id. ¶¶ 80–84.

Wells Fargo removed the case to this Court on January 29, 2009.  Shortly thereafter,

Wells Fargo moved to dismiss Hughes's claims against it under Fed. R. Civ. P. 12(b)(6).  Wells

Fargo's motion is now fully briefed and ripe for resolution.

## LEGAL STANDARD

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed

factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide

the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, --- F.3d ---, 2009 WL 1515373, at *6 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns

4

<u>Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion

couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further

factual enhancement."  <u>Iqbal</u>, 129 S. Ct. at 1949-50 (internal quotation marks omitted); <u>see also</u>

<u>Aktieselskabet AF 21. November 21 v. Fame Jeans Inc.</u>, 525 F.3d 8, 17 n.4 (D.C. Cir. 2008)

(explaining that the court has "never accepted legal conclusions cast in the form of factual

allegations").

<u>**ANALYSIS**</u>

**I.     Violations of the D.C. Consumer Protection Procedures Act**

Hughes alleges that Wells Fargo violated the CPPA by providing him financing on

unconscionable terms and misrepresenting material facts about the transaction.  Compl. ¶¶

76–79.  Hughes filed this suit in the Superior Court of the District of Columbia pursuant to D.C.

Code § 28-3905(k)(1).  The CPPA applies to real estate finance transactions like the one in this

case.  <u>DeBerry v. First Gov't Mortgage & Investors Corp.</u>, 743 A.2d 699, 703 (D.C. 1999).

**A.     Unconscionability**

Hughes claims that Wells Fargo's financing practices are unconscionable within the

meaning of D.C. Code § 28-3904(r).  Compl. ¶¶ 76–78.  Whether a practice is unconscionable

under that provision is determined by weighing several factors, including "knowledge by the

person at the time credit sales are consummated that there was no reasonable probability of

payment in full of the obligation by the consumer," "knowledge by the person at the time of the

sale or lease of the inability of the consumer to receive substantial benefits from the property or

services sold or leased," and "that the person has knowingly taken advantage of the inability of

the consumer reasonably to protect his interests."  D.C. Code § 28-3904(r)(1), (2), (5).

5

Hughes supports his claim that Wells Fargo provided him financing on which "there was no reasonable probability of payment in full," id. § 28-3904(r)(1), with allegations that the financing requires payment of an excessive share of his income.  Hughes alleges that his monthly payment amounts to approximately 46% of his monthly income.  Compl. ¶ 37.  Hughes further alleges that although the current interest rate is the minimum allowed by Wells Fargo's terms, that rate may increase in the future.  Id. ¶ 41.  Because Hughes makes no representation about whether his present income will remain constant or increase, that -- coupled with the adjustable rate -- could result in future monthly payments of more than half of his income.  Id. ¶ 36.

Hughes's claim is analogous to other CPPA claims that have been sustained in this Circuit.  In Williams v. First Government Mortgage & Investors Corp., 225 F.3d 738 (D.C. Cir. 2000), the D.C. Circuit upheld a jury verdict finding that the defendant had knowledge that there was no reasonable probability of payment on a refinanced mortgage requiring 57% of the plaintiff's monthly income.  Id. at 744.  Similarly, in Johnson v. Long Beach Mortgage Loan Trust 2001-4, 451 F. Supp. 2d 16 (D.D.C. 2006), another judge of this Court declined to dismiss a complaint under section 28-3904(r)(1) alleging that loan payments would require more than half of the plaintiff's income.  Id. at 38.  Here, Hughes similarly alleges that Wells Fargo's terms require payment of nearly half of his income, with potential increases in the future against an income that may or may not increase.  Hughes has satisfied his pleading burden, then, because he has alleged that Wells Fargo was aware that its terms would require approximately half of his income and that he had no prospects for increased income.

Hughes next alleges that Wells Fargo's terms are unconscionable under D.C. Code § 28-3904(r)(2) because Wells Fargo knew that he would be unable "to receive substantial benefits"

from Wells Fargo's terms.  Through the refinancing, Hughes received $61,080.22 upon closing and consolidated $33,517.03 in other debt.  Compl. ¶¶ 34, 35.  Despite these benefits, Hughes contends that the refinancing also doubled his monthly mortgage payment and paid off debt on which the statute of limitations had run.  Id. ¶¶ 34, 41.  Because section 28-3904(r)(2) is merely a factor for the Court to consider, rather than an independent basis for recovery, the Court need not determine whether Hughes has sufficiently pled that Wells Fargo provided no "substantial benefit."  Nonetheless, Hughes has at least called into question whether the benefit of Wells Fargo's payment and consolidation was "substantial" in light of the increase in Hughes's monthly payment.

Finally, Hughes alleges that Wells Fargo has "knowingly taken advantage of the inability of the consumer reasonably to protect his interests."  D.C. Code § 28-3904(r)(5).  In support of this factor, Hughes asserts that he believed that Chase Manhattan and Modern Management were "connected" and that he could therefore avoid further problems if he refinanced the Chase Manhattan mortgage with another bank.  Compl. ¶ 31.  However, Hughes does not allege that Wells Fargo knew of this misunderstanding, much less that it took advantage of it.  Moreover, this misunderstanding does not suggest an inability to understand Wells Fargo's terms, which is critical to this factor.  See Williams, 225 F.3d at 744–45 (holding that a retiree with a sixth grade education who was given little time to review the terms had stated a claim); Johnson, 451 F. Supp. 2d at 38 (holding that allegations of limited education and business sophistication were sufficient to state a claim).  Even under the liberal pleading standard of the Federal Rules, a misunderstanding about the relationship between two companies does not amount to an inability to protect one's interests.

Considering together these three factors of section 28-3904(r), Hughes has stated a claim of unconscionability under the CPPA.  All that is required at this stage of the litigation is that Hughes's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 129 S. Ct. at 1949 (internal quotation marks omitted). The five factors by which the CPPA defines unconscionability are disjunctive and non-exhaustive.  At a minimum, Hughes satisfies the Rule 12(b)(6) standard with respect to the first alleged factor that "there was no reasonable probability of payment in full."  Therefore, the Court will allow Hughes's unconscionability claim to proceed.

**B.      Misrepresentation**

Hughes alleges a second violation of the CPPA under D.C. Code § 28-3904(e), claiming that Wells Fargo "misrepresent[ed] material facts when such failure tended to mislead."  Compl. ¶ 79.  A careful review of the complaint reveals that Hughes has failed to allege any facts that could support relief on this ground.  Hughes relies on his allegation that Wells Fargo "insisted that [Hughes] would [] have to pay off all of his unsecured debt, as well as his second . . . mortgage, as a condition of obtaining a new loan."  <u>Id.</u> ¶ 33.  This allegation does not contain a misrepresentation.  Banks may establish any conditions they wish, within the boundaries of the law, for their loans, and Wells Fargo accurately represented the terms on which it would refinance Hughes's mortgage.  Although Hughes may be able to prove that these conditions are unconscionable, he has not alleged that they were misrepresented.  Accordingly, the Court will dismiss the portion of Count V that alleges misrepresentation in violation of D.C. Code § 28-3904(e).

## II.      Quiet Title

Hughes seeks to quiet title against Wells Fargo on the grounds that Wells Fargo obtained

its security interest in the Property through unconscionable terms.  Compl. ¶ 84.  The quiet title

count depends upon the outcome of the CPPA count.  Civil remedies available under the CPPA

include "any [] relief which the court deems proper," which may include rescission.  D.C. Code §

28-3905(k)(1)(F).  In addition, the Court's equitable powers allow it to quiet title in Hughes if

Wells Fargo's actions warrant that remedy.  Hence, it would be premature to dismiss Hughes's

quiet title count while his unconscionability claim is pending.  See, e.g., Armenian Genocide

Museum and Mem'l, Inc. v. Cafesjian Family Found., Inc., 595 F. Supp. 2d 110, 119 (D.D.C.

2009) ("[I]t is premature to consider dismissal of [a quiet title count], which may or may not

constitute an appropriate remedy depending on the evidence yet to be adduced in this case.")

## CONCLUSION

Hughes alleges facts sufficient to state an unconscionability claim under the CPPA.

Hughes's quiet title count (Count VI) therefore also survives.  However, Hughes has failed to

adequately allege misrepresentation under the CPPA.  For these reasons, Wells Fargo's motion to

dismiss will be granted with respect to Hughes's misrepresentation claim, Compl. ¶ 79, but the

motion will be denied with respect to all other portions of Count V.  A separate Order

accompanies this Memorandum Opinion.

_____
                /s/
JOHN D. BATES
United States District Judge

Dated:      July 20, 2009